## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| JACQUELINE ELIZABETH GILES, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Civil Action No. 23-00323-KD-MU** |
| ) | |
| **HAMILTON HOME BUILDERS** ) | |
| **LLC, REGIONAL HOME CENTERS** ) | |
| **LLC d/b/a REGIONAL HOME** ) | |
| **CENTER OF MOBILE, and 21st** ) | |
| **MORTGAGE CORPORATION,** ) | |
| ) | |
| **Defendants.** ) | |

## AMENDED ORDER[1]

This matter is before the Court on two separate motions to compel arbitration. First, the Court considers Defendant Hamilton Home Builders, LLC's ("Hamilton") Motion to Dismiss or Stay and Compel Arbitration, (Doc. 6), Plaintiff Jackie Giles's ("Plaintiff" or "Giles") Response, (Doc. 19), and Hamilton's Reply, (Doc. 22). Next, the Court considers Defendant Regional Home Centers, LLC d/b/a/ Regional Home Center of Mobile's[2] ("Regional") Motion for Stay of Proceedings and to Compel Arbitration (Doc. 12), Giles's Response, (Doc. 23), and Regional's Reply. Upon consideration and for the reasons set forth herein, it is **ORDERED** that Hamilton's

---

[1] This order amends the last sentence in Section C.iv of the Order entered December 1, 2023. (Doc. 27).

[2] Regional Home Centers, LLC d/b/a Regional Home Center of Mobile is the entity named as a defendant in this matter. (See Doc. 1-1). However, in its various legal filings, Regional most often refers to itself "Regional Enterprises, LLC . . . D/B/A Regional Enterprises of AL, LLC." (See, e.g., Doc. 12 at 1). As will be explained, Giles at one point attempts to raise the legal significance of the fact that the Regional entity that is a named defendant in this action is not the Regional entity listed as a party to the relevant arbitration agreement with Giles. (See Doc. 23). As will also be explained, this is of no legal consequence to the Court's Order. Therefore, the Court will interchangeably and collectively refer to each of the Regional entities as "Regional" but will refer to the specific Regional entity by name where appropriate.

Motion to Dismiss or Stay and Compel Arbitration, (Doc. 6), is **GRANTED** and that the proceedings between Giles and Hamilton are hereby **STAYED** pending resolution of these claims in accordance with Hamilton's arbitration agreement with Giles. It is also **ORDERED** that Regional's Motion for Stay of Proceedings and to Compel Arbitration, (Doc. 12), is **GRANTED** and that the proceedings between Giles and Regional are hereby **STAYED** pending resolution of these claims in accordance with Regional's arbitration agreement with Giles.

## I.       BACKGROUND

### A.  The Manufactured Home

In August 2021, Plaintiff Giles purchased a new 2022 66-foot Hamilton Carolina C double-wide manufactured home (the "Manufactured Home" or "Home"). (Doc. 1-1 at 3; Doc. 19 at 3). Defendant Hamilton manufactured the Manufactured Home. (Doc. 6-1). Hamilton sold the Manufactured Home to a dealer in manufactured homes, Regional, in early August 2021. (Doc. 6-1 at 3-4; Doc. 6-2). Third-party transportation companies transported the Manufactured Home to Regional's lot in pieces. (Doc. 6-1 at 2-3). One of the sections of the Manufactured Home was transferred by Bennett Truck Transport, LLC, located in McDonough, Georgia, to Regional via the state and federal highway system. (Id.; Doc. 6-3). Hamilton used materials and supplies that were imported from various states to manufacture the Manufactured Home. (Doc. 6-1 at 4). Giles purchased the Manufactured Home from Regional, paying $155,460 and financing it through a loan with 21st Mortgage Corporation ("21st Mortgage") and a cash down payment of $5,000. (Doc. 1-1 at 3; Doc. 19 at 3).

In connection with the sale of the Manufactured Home to Regional, Hamilton offered a Hamilton Home Builders, LLC Limited One Year Warranty and Arbitration Agreement ("Limited Warranty" and "Hamilton Arbitration Agreement") for the ultimate purchaser of the

Manufactured Home. (Doc. 6-1 at 4-5; Doc. 6-4). In connection with Giles's purchase of the Manufactured Home from Regional, Giles and Regional executed an arbitration agreement (the "Regional Arbitration Agreement"), separate and apart from the Hamilton Arbitration Agreement. (Doc. 12-1 at 2; Doc. 12-2 at 4).

Giles alleges that after purchase of the Manufactured Home but before its delivery, she noticed many problems with the home and "pointed them out to Regional's representatives." (Doc. 1-1 at 4; Doc. 19 at 4). She asserts that the representatives "assured [her] that all of the problems would be fixed after the home was transported to the property." (Id.). Giles alleges that when the water was turned on to the Manufactured Home the day before she was scheduled to take delivery in September 2021, a hole in the water supply plumbing caused a "massive amount of water" to enter the Home, flooding it. (Doc. 1-1 at 4-5; Doc. 19 at 4). After Giles contacted Regional, it allegedly told her that the issue causing the leak was fixed and that the home was thoroughly cleaned and dried. (Doc. 19 at 4). Giles claims that even though Regional made some repairs, the water problem persisted so that by August 2022, she noticed water leaking when it rained and mold growing in the master bedroom closet. (Id.; Doc. 1-1 at 5). Despite notifying both Regional and Hamilton, they allegedly failed to fix the problems with the Manufactured Home after promising to do so. (Doc. 1-1 at 5; Doc. 19 at 4).

Giles asserts that tests have confirmed the elevated presence of mold-generated toxins, including Chaetomium, in the Home. (Doc. 1-1 at 5; Doc. 19 at 5). Also, she and her children have experienced health issues, including headaches and respiratory problems, due to the mold exposure. (Id.). Giles allegedly notified Hamilton and Regional by letter dated November 15, 2022, that she revoked her acceptance of the Manufactured Home and requested a full refund, which was refused. (Doc. 1-1 at 6; Doc. 19 at 5).

**B.  Attempts to Arbitrate between Giles and Hamilton, Withdrawal, and Litigation**

Under the Hamilton Arbitration Agreement, "any and all disputes, controversies or claims of any kind or nature which arise from or relate to the subject manufactured home . . . shall be governed by the Federal Arbitration Act." (Doc. 6-4 at 3). If the claims cannot be resolved through direct discussions or negotiations, then the claims involving only a single claimant "shall first be mediated as administered by the American Arbitration Association (the "AAA") under its Home Construction Arbitration Rules and Mediation Procedures ["Home Construction Rules"] . . . before resorting to binding arbitration." (Id.). The Hamilton Arbitration Agreement goes on to say, "Thereafter, any unresolved claims shall be settled by binding arbitration administered by the AAA in accordance with its Home Construction Arbitration Rules or such other rules as may be applicable . . . ." (Id.) Giles and Hamilton do not dispute that after direct negotiations broke down, the parties made an unsuccessful attempt at mediation in accordance with the Hamilton Arbitration Agreement. (Doc. 6 at 5; Doc. 19 at 8).

On March 30, 2023, Giles initiated arbitration against Hamilton and Regional by filing a Statement of Claims and Demand for Arbitration with the AAA under its Consumer Arbitration Rules ("Consumer Rules"). (Doc. 6-6; Doc. 6-1 at 6-7). The initial filing fee for the Consumer Rules, which Hamilton claims she paid, is $207. (Doc. 19 at 9).

On May 1, 2023, Regional rejected Giles's Demand for Arbitration, stating its intention to proceed under the terms of the Regional Arbitration Agreement. (Doc. 6-8 at 3-4). That same day, Hamilton contacted the AAA and notified it that (1) it did not object to Regional insisting on a separate arbitration process pursuant to the Regional Arbitration Agreement; and (2) objected to an arbitration under the Consumer Rules. (Doc. 6-7 at 2) ("In accordance with the attached

Limited Warranty, any arbitration involving Hamilton must be initiated and conducted in accordance with the Home Construction Arbitration Rules.").

On May 15, Giles responded to Hamilton's objection by arguing that Rule R-1 of the Consumer Rules mandates application of the Consumer Rules in a "consumer agreement" even if other rules are designated in the arbitration agreement. (Doc. 19-5 at 2). Rule R-1 provides, "The parties shall have made these [Consumer Rules] a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] and . . . the arbitration agreement is contained within a consumer agreement, as defined below, that specifies a particular set of rules other than the [Consumer Rules]." The AAA defines a "consumer agreement" as an

> Agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with consumers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. Examples of contracts that typically meet the criteria for application of these Rules, if the contract is for personal or household goods or services and has an arbitration provision, include, but are not limited to the following . . . automobile and manufactured home purchase contracts.

Rule R-1.

On May 30, counsel for Hamilton wrote to the AAA that shortly after the Home Construction Arbitration Rules were created, he checked with an AAA office regarding the application of the Home Construction Arbitration Rules to manufactured housing cases because he claims houses do not fit the definition of "standardized, consumable goods or services" under the Consumer Rules. (Doc. 19-6 at 1). Counsel for Hamilton indicated that for the last fifteen years, "the AAA has routinely allowed the use of the Home Construction Arbitration Rules for manufactured housing cases" and attached a copy of a 2009 letter confirming the use of the Home Construction Arbitration Rules "for claims under the old warranty where a designation of the rules to be utilized was not made." (Id. at 2). On June 16, the AAA emailed counsel for all parties, saying,

"After careful review of the parties' comments and the contracts submitted, all the agreements provided name the AAA's Home Construction Rules we'll have to proceed under the AAA's Home Construction Rules [sic]." (Doc. 6-9 at 2; Doc. 19-8). The initial filing fee for claims of $100,000 to less than $300,000 or for undetermined damages is $650. (Doc. 19-9 at 2).

On July 20, the AAA again emailed counsel for all parties, stating that the Construction Industry Arbitration Rules and Mediation Procedures ("Construction Industry Rules") would apply to this matter, that the Home Construction Rules cannot be applied to a matter involving more than two parties, that the AAA needed clarification on the amount that Giles as the claimant was seeking, and that an undetermined amount would trigger the undisclosed filing fee of $7,700. (Doc. 19-10; see also Doc. 19-11).

On July 25, counsel for Giles emailed the AAA stating that she objected to administration of the dispute by the AAA under any rules other than the Consumer Rules, that a $7,700 filing fee was an effective bar to the pursuit of her claims, and that because the AAA would not administer the dispute pursuant to the Consumer Rules, Giles would not proceed with the arbitration. (Doc. 19-13 at 1). That same day, Giles filed a Complaint in the Circuit Court of Mobile County against Hamilton, Regional, and 21st Mortgage. (Doc. 1-1). On August 23, Defendants removed the state court litigation to this Court. (Id. at 29-31). On August 24, Hamilton filed a Motion to Dismiss or Stay and Compel Arbitration pursuant to the Hamilton Arbitration Agreement. (Doc. 6).

### C.  The Regional Arbitration Agreement

As noted above, on July 25, Giles filed her Complaint in Mobile County Circuit Court against Hamilton, 21st Mortgage, and Regional. (Doc. 1-1). On August 23, Defendants removed the state court litigation to this Court. (Id. at 29-31). On August 30, Regional filed a Motion for

Stay of Proceedings and to Compel Arbitration in accordance with the Regional Arbitration

Agreement. (Doc. 12).

The Regional Arbitration Agreement reads,

Customer and Regional Enterprises, LLC agree that any and all claims, demands, disputes, or controversies of every kind or nature between them, including but not limited to, tort and contract claims, claims based on federal state or local statute, law, order, ordinance or regulations; and claims arising from, concerning or relating to any of the negotiations involved in the transaction, the terms and provisions of agreements, the arrangements for financing, the performance of the agreements of the condition of the Home, or any other aspect of the transaction shall be, at the request of either party, settled by binding arbitration conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Section 1, et seq. and according to generally accepted arbitration procedures, such as those promulgated by the American Arbitration Association, and specifically, all parties agree that it is the intent of this arbitration agreement for the parties to refrain, if at all possible, from using the American Arbitration Association should an arbitration proceeding become necessary. The parties agree to use the services of a neutral, third-party arbitrator who is both a licensed practicing attorney within the State of Mississippi and listed with the Mississippi Bar Association as a qualified arbitrator or mediator. The responsibility of the cost of the arbitration shall be determined by the arbitrator. Without limiting the generality of the foregoing, it is the intention of the Customer and Regional Enterprises, LLC, when so requested by either party, to resolve by binding arbitration all disputes between them concerning this transaction, including, without limitation, this agreement to arbitrate, and/or any representations, promises or omissions made in connections with negotiations for this transaction.

Either party may demand arbitration by serving a written demand for arbitration along with a statement of the matter of controversy to the other party. The Customer and Regional Enterprises, LLC agree that the arbitration proceedings to resolve all such disputes shall be conducted in Rankin County, Mississippi. Customer and Regional Enterprises, LLC further agree that any question regarding whether a particular controversy is subject to arbitration shall be decided by the Arbitrator, and that this agreement shall be binding upon, and inures to the benefit of buyer/lessee and Regional Enterprises, LLC and the officers, employees, agents, and affiliated entitles of each of them.

(Doc. 12-2 at 8).

### D.  21st Mortgage

On September 28, 21st Mortgage filed its Second Unopposed Motion for Extension of

Deadline to Respond to Plaintiff's Complaint. (Doc. 20). It requested 14 days after the Court

rules on Hamilton and Regional's respective motions to compel arbitration to respond to Giles's

Complaint. (Id.). The next day, the Court granted 21st Mortgage's motion, ordering that 21st Mortgage shall answer or otherwise responds to the Complaint within 14 days after the entry of this decision. (Doc. 21). This decision does not modify the Court's prior order.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides, "A written contract in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. A party seeking to enforce a written arbitration agreement may petition a federal district court that would otherwise have subject matter jurisdiction over a civil action between the parties for an order directing that arbitration proceed in the manner provided for in the agreement. § 4. After granting a motion to compel arbitration, the district court shall stay trial proceedings pending the outcome of the arbitration. § 3. This statutory language reflects a "strong federal policy favoring enforceability of arbitration contracts." Koullas v. Ramsey, 683 So. 2d 415, 416-17 (Ala. 1996) (citing Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 271 (1995)). "The role of the courts is to 'rigorously enforce agreements to arbitrate.'" Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985). Still, a district court may only compel arbitration of "those disputes . . . that the parties have agreed to submit." Granite Rock Co. v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 302 (2010) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995).

District courts are to undertake a two-step inquiry when considering a motion to compel arbitration: (1) assess whether the parties agreed to arbitrate that dispute by referencing the

federal substantive law of arbitrability, applicable to any arbitration agreement within the FAA's coverage; and (2) consider whether legal constraints external to the agreement foreclose arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-28 (1985); Patriot Mfg., Inc. v. Dixon, 399 F. Supp. 2d 1298, 1300-01 (S.D. Ala. 2005). With respect to the first prong, to determine whether the parties agreed to arbitrate a particular dispute, courts consider: (1) whether there is a valid arbitration agreement; and (2) whether the dispute at bar falls within the scope of the arbitration agreement. Dixon, 399 F. Supp. 2d at 1301; Shores of Panama, Inc. v. Safeco Ins. Co. of America, No. 07-CV-00602-KD-B, 2008 WL 4417558, at *4 (S.D. Ala. Sep. 29, 2008). "To resolve these questions, courts apply state law principles relating to ordinary contract formation and interpretation, construed through the lens of the federal policy favoring arbitration." Dixon, 399 F. Supp. 2d at 1301 (internal citations omitted).

The Court may consider evidence outside of the pleadings for purposes of a motion to compel arbitration. Chambers v. Groome Transp. of Ala., 41 F. Supp. 2d 1327, 1334 (M.D. Ala. 2014). Courts in the Eleventh Circuit resolve motions to compel arbitration under a summary-judgment-like standard. Johnson v. KeyBank Nat'l Ass'n, 754 F.3d 1290, 1294 (11th Cir. 2014) (noting the "summary-judgment-like nature of an order compelling arbitration, which is in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate") (internal quotations and citations omitted).

## III.   ANALYSIS

### A.  The FAA Applies to Both the Hamilton Arbitration Agreement and Regional Arbitration Agreement

The FAA applies only to written arbitration agreements that "involve commerce." 9 U.S.C. § 2. The parties do not dispute the existence of either the Hamilton Arbitration Agreement, (Doc. 6-4), or the Regional Arbitration Agreement, (Doc. 12-2 at 8). Thus, the first

issue is whether the Hamilton Arbitration Agreement and Regional Arbitration Agreement "involve" commerce for purposes of the FAA, thereby triggering its coverage. The Supreme Court has held that "involving" is the functional equivalent of "affecting," signaling Congress's intent to exercise the full extent of its Commerce Clause powers. Dobson, 513 U.S. at 273-74. Therefore, as under Commerce Clause jurisprudence, if in the aggregate the economic transaction in which the parties were engaged would have a substantial effect on interstate commerce, the FAA will govern the validity and applicability of any arbitration agreement. Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56-58 (2003).

The FAA clearly applies to the case at bar. Hamilton is a limited liability company with two members: Regional Holdings Corp, a corporation incorporated and headquartered in Mississippi, and Heath Jenkins, a citizen of Mississippi. (Doc. 1 at 3). Regional is a limited liability company, all members of which are Mississippi citizens, and 21st Mortgage is a Delaware Corporation with its principal place of business in Tennessee. (Doc. 1 at 3; Doc. 1-1 at 26). Plaintiff, of course, is a citizen of Alabama, (Doc. 1 at 3); the Manufactured Home was constructed with materials that Hamilton imported across state lines, (Doc. 6-1 at 4); and transported to Regional via the state and federal highway system, (Id. at 3-4). Because the importation of materials across state lines and transportation via the federal highway system would undoubtedly in the aggregate affect interstate commerce, Citizens Bank, 539 U.S. at 56-58, the FAA governs the validity and applicability of both the Hamilton Arbitration Agreement and Regional Arbitration Agreement.

**B. Hamilton's Motion to Dismiss or Stay and Compel Arbitration**

**i.      The Hamilton Arbitration Agreement's Gateway Arbitrability[3]**

Generally, courts decide threshold "arbitrability" issues of whether the parties agreed to

arbitrate, including questions regarding the enforceability, scope, or applicability of the

arbitration agreement itself. Attix v Carrington Mortgage Services, LLC, 35 F.4th 1284, 1295

(11th Cir. 2022); Nutraceuticals, LLC v. Cyanotech Corp., 769 F.3d 1308, 1311 (11th Cir. 2014)

("[O]rdinarily, the question of arbitrability is undeniably one for judicial determination.")

(internal quotations omitted and alteration adopted). But the FAA permits parties to contractually

agree that an arbitrator will decide these gateway questions instead,[4] Henry Schein, Inc. v. Archer

and White Sales, Inc., 139 S.Ct. 524, and courts will enforce delegation agreements provided that

the court finds an agreement was formed, it applies to the dispute at hand, and no grounds render

it invalid or unenforceable, see 9 U.S.C. § 2. Attix, 35 F.4th at 1295-96; Rent-A-Center, 561 U.S.

at 70 ("The additional agreement is valid under § 2 'save upon such grounds as exist at law or in

equity for the revocation of any contract,' and federal courts can enforce the agreement by

staying federal litigation under § 3 and compelling arbitration under § 4."). Just as the validity of

arbitration agreements may only be challenged under § 2 by attacking the agreement to arbitrate

itself and not the broader contract containing the arbitration agreement, delegation clauses must

be specifically challenged as unconscionable – or any other grounds that would render them

---

[3] "Plaintiff agrees that there is a facially enforceable arbitration provision in Hamilton's written warranty." (Doc. 19 at 1). Giles does not appear to dispute the enforceability of the Hamilton Arbitration Agreement on the basis that it was unsigned. In any event, Alabama case law would preclude her from successfully doing so in this case. See, e.g., S. Energy Homes, Inc. v. Ard, 772 So. 2d 1131, 1134 (Ala. 2000).

[4] These agreements to arbitrate threshold arbitrability issues are often called "delegation" agreements. Attix, 35 F.4th at 1295; Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68-69 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking an arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

unenforceable under § 2 – notwithstanding the enforceability of the broader arbitration agreement. Rent-A-Center, 561 U.S. at 71-72.

In addition, when analyzing delegation agreements, courts reverse the FAA's standard presumption favoring arbitration. JPay, Inc. v. Kobel, 904 F.3d 923, 929 (11th Cir. 2018) ("Notably, this presumption [favoring arbitration] is reversed, however, when the contract presents ambiguity on the assignment of a question of arbitrability – when it is unclear whether a party has agreed that arbitrators should decide arbitrability.") (internal quotations omitted and alteration adopted). Accordingly, unlike with arbitration agreements more broadly, courts resolve ambiguities in a delegation agreement about the arbitrability of claims in favor of the party opposing arbitration. Attix, 35 F.4th at 1295-96; Kaplan, 514 U.S. at 944. If a court finds the delegation agreement to be clear and unmistakable, though, it must enforce it despite this presumption. Attix, 35 F.4th at 1296; Henry Schein, 139 S.Ct. at 528-31 (holding that, under the FAA, federal courts must enforce clear delegation agreements even if the argument that the arbitration agreement applies to the particular dispute is "wholly groundless").

Here, the Hamilton Arbitration Agreement's delegation agreement (the "Hamilton Delegation Agreement") reads, "The Manufacturer and the Homeowner further agree to submit to arbitration the issues of substantive and procedural arbitrability, including defenses to arbitration and all disputes regarding the enforceability, interpretation, breadth, scope and meaning of this Agreement." (Doc. 6-4 at 3).  The Court finds the Hamilton Delegation Agreement's wording broad enough[5] to clearly and unmistakably encompass the question of which AAA rules apply to any Giles-Hamilton arbitration. Courts in other jurisdictions have ruled that, in the case of a

---

[5] While Giles does not attack the Hamilton Arbitration Agreement or its delegation clause as being overbroad, it is worth noting that "an 'overbroad' arbitration provision alone does not indicate substantive unconscionability." SCI Alabama Funeral Services, LLC v. Hinton, 260 So. 2d 34, 40 (Ala. 2018).

comprehensive delegation agreement, under which rules the arbitration shall proceed is a question of procedural arbitrability for the arbitrator, not the court. <u>Bancol Y Cia. S. En C. v. Bancolombia S.A.</u>, 123 F. Supp. 2d 771, 772 (S.D.N.Y. 2000) (ruling that a similar, broadly worded delegation agreement "inherently subsumes the right of the arbitrators to determine what procedural rules apply"); <u>Reid v. The Tandym Grp., LLC</u>, No. 22-CV-469, 2023 WL 6389131, at *10 (S.D.N.Y. Sep. 29, 2023) ("It is also up to the arbitrator, not this Court, to determine the procedural question whether the arbitration will proceed under the AAA Commercial Arbitration Rules or whether those rules themselves point to the application of some or all of the AAA Employment Arbitration Rules."). Additionally, both the Eleventh Circuit and the Supreme Court of Alabama have held that arbitration provisions that incorporate rules that provide for the arbitrator to decide gateway arbitrability issues reveal the parties' intent to arbitrate questions of arbitrability like the one at bar. <u>Terminix International Co. v. Palmer Ranch Ltd. Partnership</u>, 432 F.3d 1327, 1332 (11th Cir. 2005); <u>CitiFinancial Corp., LLC v. Peoples</u>, 973 So. 2d 332, 339-40 (Ala. 2007). The arbitration agreements in <u>Palmer Ranch</u> and <u>CitiFinancial</u> both incorporated the AAA's Commercial Arbitration Rules, which importantly use the exact same language regarding an arbitrator's "jurisdiction" as all AAA rules relevant to this dispute. <u>See</u> Construction Industry Rules ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."); Consumer Rules (using the same operative language); Home Construction Rules (using the same operative language).

Further, all three AAA rules include the same wording that "the arbitrator shall interpret and apply these Rules . . . relating to the arbitrator's powers and duties." Unfortunately for Giles, the Consumer Rules under which she attempts to arbitrate state, "The AAA has the initial authority

to apply or not to apply the Consumer Arbitration Rules." Rule R-1(e), Consumer Rules.

Therefore, because Giles and Hamilton clearly and unmistakably agreed in the Hamilton

Delegation Agreement to arbitrate the issue of which AAA rules were to apply, it must enforce it

unless there are grounds under § 2, such as unconscionability or waiver, to render the delegation

agreement unenforceable. See Rent-A-Center, 561 U.S. at 70.

### ii.    Unconscionability

Giles also specifically attacks the Hamilton Delegation Agreement as unconscionable and

unenforceable because "any determination under [it] would require Plaintiff to pay fees of

between $5,100 and $16,175," which denies Giles the vindication of her statutory rights,

including those arising under the Alabama UCC and the Magnuson-Moss Warranty Act. (Doc. 1-

1 at 9-10; Doc. 19 at 12). Because the Hamilton Arbitration Agreement was formed in Alabama,

it must be unconscionable under Alabama law to be rendered unenforceable under § 2. See Rent-

A-Center, 561 U.S. at 73; see also Leeman v. Cook's Pest Control, Inc., 902 So. 2d 641, 644

(Ala. 2004) ("General contract defenses, such as fraud, duress, or unconscionability, may be

applied to invalidate an arbitration agreement without contravening the FAA."). To avoid an

arbitration provision on the ground of unconscionability, the party objecting to arbitration must

show both procedural and substantive unconscionability. Blue Cross Blue Shield of Ala. v. Rigas,

923 So. 2d 1077, 1087 (Ala. 2005) (emphasis added); Family Security Credit Union v.

Etheredge, 238 So. 2d 35, 40 (Ala. 2017) ("Having no evidence of procedural unconscionability

before it, the trial court erred in holding that the arbitration provision in each contract is

unconscionable."). Substantive unconscionability

> Relates to the substantive contract terms themselves and whether those terms are
> unreasonably favorable to the more powerful party, such as terms that impair the integrity
> of the bargaining process or otherwise contravene the public interest or public policy;
> terms (usually of an adhesion or boilerplate nature) that attempt to alter in an

impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.

Ex parte Foster, 758 So. 2d 516, 520 n.4 (Ala. 1999) (quoting 8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed. 1998)). The party contesting the arbitration clause on the basis that the cost of arbitration makes the clause unconscionable bears the burden of showing the likelihood of incurring prohibitively expensive arbitration costs. Ex parte Thicklin, 824 So. 2d 723, 734-35 (Ala. 2002), overruled on other grounds by Patriot Mfg., Inc. v. Jackson, 929 So. 2d 997 (Ala. 2005) (holding that absent evidence of the plaintiff's income, family expenses, or the estimated costs of arbitration, it would not deny a motion to compel arbitration on the basis that using a particular set of AAA rules renders the arbitration clause unconscionable from a financial standpoint); see also Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90-91 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that Randolph will bear such costs if she goes to arbitration."). However, the imposition of excessive filing fees and arbitration costs on a claimant, when considered in the full context of the particular claimant's situation – including their financial resources – may establish unconscionability. BankAmerica Hous. Serv., Div. of Bank of America, FSB v. Lee, 833 So. 2d 609, 619 (Ala. 2002).

Procedural unconscionability, on the other hand, includes "procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction." Foster, 758 So. 2d at 520, n.4 (quoting 8 Williston on Contracts § 18:10). A primary indicator of procedural unconscionability is whether the person

challenging the arbitration clause would have been able to obtain the product that is the basis of the agreement without signing an arbitration agreement. American General Finance, Inc. v. Branch, 793 So. 2d 738, 750 (Ala. 2000). Yet Alabama courts will not find that the claimant lacked a meaningful choice when there is no indication that they sought out other sellers with more favorable arbitration terms, Leeman, 902 So. 2d at 647; Branch, 793 So. 2d at 752 (denying a finding of unconscionability because, in part, the plaintiff "did not shop around for a loan that did not involve an agreement to arbitrate"); Conseco Fin. Corp.-Alabama v. Boone, 838 So. 2d 370, 373 (Ala. 2002); Green Tree Fin. Corp. of Alabama v. Vintson, 753 So. 2d 497, 504 (Ala. 1999), or at least attempted to negotiate the deletion of the arbitration provision, Rigas, 923 So. 2d at 1088-89; Tisaw v. AmSouth Bancorporation, No. 4:06-CV-0882-RDP, 2006 WL 8437813, at *9 (M.D. Al. Aug. 25, 2006) ("Thus, to prove unconscionability, a plaintiff must establish unsuccessful attempts to secure the service from other providers and to negotiate the deletion of the arbitration provision."). A claimant, however, need not show that the market was completely closed – "only that she was unable to acquire goods or services without considerable expenditure of time and resources." Branch, 793 So. 2d at 751 (emphasis included).

The Court cannot find that granting Hamilton's Motion to Compel Arbitration, (Doc. 6), would be substantively unconscionable as applied to Giles. Giles does satisfy her burden under Alabama law to produce evidence of her household income, (Doc. 19-12 at 1) ("Our total household annual income is typically around $90,000."), the estimated total costs of arbitrating under the Construction Industry Rules, (Doc. 19-11), and her ability to foot these arbitration costs, (Doc. 19-12) ("There is no way I can afford to pay an upfront initial filing fee of anything close to $7,700 to litigate my claims against Hamilton, much less total administrative costs of $16,175."). See Thicklin, 824 So. 2d at 734-35. She also asserts a reason for why she failed to

provide the AAA with the amount of damages sought. (Doc. 19-12) ("I believe the monetary value of my claims is undetermined because my claims include not only the costs and expenses associated with the home purchase but also compensation for the legitimate worry and concern I have over the health of my family and the hardship the problems with the home has caused."). But Giles overlooks that the AAA would accept a range of the dollar amount that she sought. (Doc. 19-13) ("If the exact amount is not known, a range will be accepted. Please note, TBD will trigger the undisclosed filing fee of $7,700). Considering that the Manufactured Home cost $155,460, (Doc. 1-1 at 10), and accounting for other damages, the Administrative Fee Schedule for the Construction Industry Rules designates relevant initial filing fees of $2,900 and $4,400 in the $150,000-$300,000, and $300,000-$500,000, ranges, respectively. Construction Industry Arbitration Rules and Mediation Procedures Administrative Fee Schedules, https://www.adr.org/sites/default/files/Construction_Arbitration_Fee_Schedule_0.pdf (with additional final fees of $2,200 and $3,850, respectively).

The Court also acknowledges that Giles may have to foot other costs associated with the arbitration, (Doc. 19-11), and appreciates the candor and sincerity with which Giles addresses the Construction Industry Rules provision that allows the AAA, "in the event of extreme hardship on the part of any party," to defer or reduce administrative fees. (Doc. 19 at 21) ("It would be pure speculation to force arbitration under the assumption that the AAA would agree that the fees pose an 'extreme hardship.' After all, she is not destitute. She and her husband earn a middle-class income and they own real and personal property, as well as a savings account. Would the 'extreme hardship' standard require her to rob her savings, liquidate her 401k, or sell land or an automobile to pay for the filing fee?"). But the Supreme Court of Alabama has concluded on several occasions that provisions in AAA rules that allow an arbitrator to reduce or defer

administrative fees in the event a party can prove "extreme hardship" imperil a finding that prohibitively expensive arbitration costs are likely. <u>Leeman</u>, 902 So. 2d at 650-51 (finding that the allowance under the AAA Commercial Rules for the arbitrator to reduce or defer administrative fees meant that the plaintiffs may not have to pay any of the costs of arbitration); <u>Ex parte Dan Tucker Auto Sales, Inc.</u>, 718 So. 2d 33, 37 (Ala. 1998) ("Phelps did not exhaust his administrative remedies as to the matter of the filing fee . . . Rule 48 [of the Commercial Rules] specifically provides that the AAA can defer or reduce the administrative fees 'in the event of extreme hardship on the part of any party.'"). Here, the Consumer Rules, Home Construction Rules, and Construction Industry Rules all permit the AAA to defer or reduce administrative fees in the event of "extreme" hardship. Moreover, the Alabama Supreme Court has held repeatedly that the Magnuson-Moss Act does not invalidate arbitration provisions in a written warranty. <u>Ard</u>, 772 So. 2d at 1135; <u>Harold Allen's Mobile Home Factory Outlet, Inc. v. Early</u>, 776 So. 2d 777, 785-86 (Ala. 2000); <u>S. Energy Homes, Inc. v. Davis</u>, 776 So. 2d 770, 771 (Ala. 2000); <u>S. Energy Homes, Inc. v. Gregor</u>, 777 So. 2d 79, 81-82 (Ala. 2000); <u>S. Energy Homes, Inc. v. McCray</u>, 788 So. 2d 882, 883-84 (Ala. 2000). Giles's argument that the Hamilton Arbitration Agreement is unconscionable because it denies her the vindication of her statutory rights, including those under the Magnuson-Moss Act, (Doc. 1-1 at 9-10), is therefore misplaced. And while Giles is correct that FAA does not require courts to enforce contractual waivers of substantive rights and remedies, an arbitration agreement does not "alter or abridge substantive rights." As a specialized kind of forum-selection clause, "it merely changes how those rights will be processed." <u>Viking River Cruises, Inc. v. Moriana</u>, 142 S. Ct. 1906, 1919 (2022). Accordingly, no matter how much the Court may disagree with the AAA's nonapplication of the Consumer

Rules to Giles's arbitration as an initial matter, it cannot hold that the effect of forcing her to arbitrate rises to the level of substantive unconscionability under Alabama Law.

Even if the Court found enforcing the Hamilton Arbitration Agreement and the Hamilton Delegation Agreement to be substantively unconscionable, Giles also fails to carry her burden to establish procedural unconscionability. While Giles maintains that she was not presented with a copy of the Hamilton Arbitration Agreement until after the Manufactured Home was delivered, (Doc. 19-12 at 1), she provides no evidence that she sought out other vendors with more favorable arbitration terms. Nor does she point to evidence of whether other mobile home sellers require customer assent to arbitration agreements as a condition of sale. See Leeman, 902 So. 2d at 647; Branch, 793 So. 2d at 752; Boone, 838 So. 2d at 373; Vintson, 753 So. 2d at 504. Lacking such evidence, the Court cannot find the Hamilton Arbitration Agreement procedurally unconscionable under Alabama law. See Palm Beach Vacation Owners Ass'n, Inc. v. EscapesA, Inc., No. 12-CV-00027-KD-B, 2012 WL 2368335, at *3 (S.D. Ala. June 21, 2012) ("Plaintiffs have not presented any evidence demonstrating that, without agreeing to an arbitration provision, Plaintiffs could not have purchased a condominium unit or participated in a time share arrangement in Orange Beach, Alabama other than at Palm Beach Resort.").

### iii.    Waiver

Giles argues that by "asking the Court to compel arbitration under a set of rules other than those required pursuant to the agreement and the AAA rules," Hamilton has waived its right to compel arbitration. (Doc. 19 at 16-19). It should be noted that there is a presumption against a court finding waiver of the right to compel arbitration. Lee v. YES of Russellville, Inc., 784 So. 2d 1022, 1028 (Ala. 2000) (citing Eastern Dredging & Constr., Inc. v. Parliament House, LLC, 698 So. 2d 102, 103 (Ala. 1997)). While the Supreme Court recently discarded the waiver rules

of nine federal appeals courts, including the Eleventh Circuit, that demanded a showing of prejudice, Morgan v. Sundance, Inc., 596 U.S. 411 (2022), the court still must find, under the totality of the circumstances, that the party has "acted inconsistently with the arbitration right." Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315-16 (11th Cir. 2002); see also Amargos v. Verified Nutrition, LLC, 653 F. Supp. 3d 1269, 1272-73 (11th Cir. 2023) (discussing the status of the Eleventh Circuit test post-Sundance).

Generally, waiver arguments follow when one party seeks to compel arbitration after invoking litigation for some period of time. E.g., Sundance, 596 U.S. 411. Here, Giles points to Hamilton's May 1 objection to any arbitration under the Consumer Rules, (Doc. 19-4), as breach of the Hamilton Arbitration Agreement. The Agreement stipulates that "any unresolved claims shall be settled by binding arbitration administered by the AAA in accordance with its Home Construction Arbitration Rules or such other rules as may be applicable . . . ." (Doc. 6-4 at 3). Rule R-1 of the Consumer Rules sets out that the parties "shall have made these [Consumer Rules] a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] and . . . the arbitration agreement is contained within a consumer agreement, as defined below, that specifies a particular set of rules other than the [Consumer Rules]."

The Court notes that the contract underlying the Hamilton Arbitration Agreement likely matches the definition of a "consumer agreement" in the Consumer Rules, which list "manufactured home purchase contracts" as examples of contracts that "typically meet the criteria" for application of the Consumer Rules. See Rule R-1, Consumer Rules. But this must be considered in light of the Hamilton Arbitration Agreement, (Doc. 6-4) ("[I]n accordance with its Home Construction Arbitration Rules or such other rules as may be applicable . . ."), and the previously discussed effect of the Hamilton Delegation Agreement and all three sets of relevant

20

rules on the AAA's ability to determine which of its rules apply to Giles's arbitration. Accordingly, the Court cannot find that Hamilton acted inconsistently with its arbitration right by objecting to arbitrating under the Consumer Rules.

If the AAA had (correctly or not) decided to apply the Consumer Rules to Giles's matter, only for Hamilton to object and withdraw from any arbitration under the Consumer Rules, a finding of waiver might be appropriate. See Freeman v. SmartPay Leasing, LLC, 771 F. App'x 926, 933 (11th Cir. 2019) (holding that SmartPay acted inconsistently with its right to arbitrate, and therefore waived its right to arbitration, by failing to pay filing fees required under the arbitration agreement). But unlike in Freeman, Hamilton's objection preceded the AAA's decision to apply the Home Construction Rules, (see Doc. 19-8), and then the Construction Industry Rules, (see Doc. 19-10), to Giles's pending arbitration. Thus, Hamilton can hardly be said to have acted inconsistently with rules that in theory maybe should have applied, but which the AAA never actually selected.

### iv.     Compelling Arbitration and Staying the Proceedings

Following a party's motion to compel, the court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed in accordance with the terms of the agreement." 9 U.S.C. § 4. As discussed at length, the central issue of which rules Giles and Hamilton are subject to is a question of arbitrability that is clearly and unmistakably given to the AAA per the Hamilton Delegation Agreement. And because there are no grounds under § 2 to render the Agreement unenforceable, including unconscionability or waiver, the Court must compel Giles and Hamilton to arbitrate in keeping with their valid contract and governing law.

Hamilton also moves this Court to "dismiss or stay the proceedings." (Doc. 6 at 1). Under the FAA, after concluding that the dispute between the parties is arbitrable, the district court shall, on application of one of the parties, stay the trial proceedings pending the outcome of the arbitration. § 3; Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1369 (11th Cir. 2005). The proper order is therefore to stay, and not to dismiss, the current proceedings. Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 699 (11th Cir. 1992) ("The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them.").

### v.   Conclusion

Based on the above, it is **ORDERED** that Hamilton's Motion to Dismiss or Stay and Compel Arbitration, (Doc. 6), is **GRANTED**. The proceedings between Giles and Hamilton are hereby **STAYED** pending resolution of these claims in accordance with the Hamilton Arbitration Agreement.

### C.  Regional's Motion for Stay of Proceedings and to Compel Arbitration

### i.   Defendant Regional May Enforce the Regional Arbitration Agreement's Delegation Clause

Regional moves to compel Giles to arbitrate her claims against it in accordance with the Regional Arbitration Agreement and to stay these proceedings. (Doc. 12). While Giles does not dispute the validity of the Regional Arbitration Agreement, she first maintains that because the Regional entity named as a defendant in this lawsuit is not a party to the Agreement, it may not compel arbitration thereunder. (See Doc. 23 at 1-2). This argument is a red herring. Giles says that because the Regional Arbitration Agreement refers to "Regional Enterprises, LLC," a separate entity from Regional Home Centers, LLC, the named defendant in this action, the named Regional is prohibited from taking advantage of an arbitration agreement written for a

separate entity. Yes, assent to arbitrate is typically manifested through a party's signature to the arbitration agreement. Ex parte Stamey, 776 So. 2d 85, 88-89 (Ala. 2000). However, Giles overlooks the two scenarios under Alabama law that grant nonsignatories standing to enforce arbitration agreements.

First, a nonsignatory can enforce an arbitration provision when the claims against it are "intimately founded in and intertwined with" the underlying contractual obligations. Smith v. Mark Dodge, Inc., 934 So. 2d 375, 380-81 (Ala. 2006) (internal citations omitted). Giles's claims against Regional, and Regional's defenses thereto, are clearly intimately related to the underlying contractual obligations that include the Regional Arbitration Agreement. (See Doc. 26 at 2). Further, the "exception to that exception" does not apply because Regional Home Centers, LLC was contemplated as a party. Mark Dodge, 934 So. 2d at 380-81; (Doc. 12-2 at 8) (The Regional Arbitration Agreement "inures to the benefit of . . . Regional Enterprises, LLC" and its "officers, employees, agents, and affiliated entities").

Second, a nonsignatory can enforce an arbitration agreement under a third-party-beneficiary theory that affords the third party all the rights and benefits, as well as the burdens, of the arbitration agreement. Ex parte Stamey, 776 So. 2d 85, 89 (Ala. 2000). The Regional Arbitration Agreement's "inures to the benefit of . . . affiliated entities" language likewise permits the Defendant Regional to compel arbitration under the Regional Arbitration Agreement. Thus, Giles's contention that "because movant is not a party to that [arbitration] agreement, it may neither initiate nor compel arbitration thereunder," (Doc. 23 at 2), falls flat.

As discussed, courts typically decide threshold "arbitrability" issues of whether the parties agreed to arbitrate. Attix, 35 F.4th at 1295; Cyanotech Corp., 769 F.3d at 1311. However, delegation agreements permit the arbitrator to decide gateway questions of whether the

arbitration agreement covers a particular controversy. Rent-A-Center, 561 U.S. at 70. Under the FAA, delegation agreements are valid "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see Rent-A-Center, 561 U.S. at 70. If a court finds a delegation agreement to be clear and unmistakable, it must enforce it. Attix, 35 F.4th at 1296; Henry Schein, 139 S.Ct. at 528-31.

Here, there is little doubt that the Regional Arbitration Agreement clearly and unmistakably includes an antecedent delegation agreement. The Regional Arbitration Agreement contains a clause that states, "Customer and Regional Enterprises, LLC further agree that any question regarding whether a particular controversy is subject to arbitration shall be decided by the Arbitrator . . . ." (Doc. 12-2 at 8) (the "Regional Delegation Agreement"). The Eleventh Circuit has held that functionally identical language constitutes a delegation agreement. See In re Checking Acct. Overdraft Litig. MDL No. 2036, 674 F.3d 1252, 1255-56 (11th Cir. 2012). Because the delegation agreement there – as here – encompassed any issue, that included the plaintiff's claims for relief. Id. at 1256. As such, the arbitrator, not the district court, was responsible for deciding whether the claims were within the scope of the arbitration agreement. Id. (citing CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98 (2012)). In this case, the Regional Delegation Agreement relieves the Court of its standard duty to determine whether the parties agreed to arbitrate this dispute.

### ii.   Inconsistent Terms in the Hamilton Arbitration Agreement do not Defeat the Regional Arbitration Agreement's Enforceability

Next, Giles claims that a Giles-Regional arbitration must proceed, if at all, in accordance with the Hamilton Arbitration Agreement. But Regional requests that this Court compel arbitration in accordance with the Regional Arbitration Agreement. (See Doc. 12). Regional only asks that the Court compel arbitration under the Hamilton Arbitration Agreement should its own

24

fail. (Doc. 23 at 7) ("If the Arbitration Agreement between Plaintiff and Regional is unenforceable, then Defendant Regional Home Centers, LLC is entitled to compel arbitration under the Hamilton Arbitration Agreement."). The question therefore is whether inconsistencies in the dueling arbitration agreements doom Regional's attempt to enforce its own. As it turns out, they do not.

Giles is correct that the scope of the Hamilton Arbitration Agreement is wide and seemingly contradicts the Regional Arbitration Agreement:

> It is agreed that <u>any and all disputes, controversies or claims of any kind or nature which arise from or relate to the subject manufactured home</u> . . . the subject purchase transaction, the transportation, setup, repair, installation, use, design, manufacture, financing, insurance, any other condition of the subject manufactured home, the documents received, delivered or executed in connection therewith or the parties thereto, their successors, assigns, heirs, representatives, parent companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents and contractors shall be governed by [the FAA] . . . . <u>Thereafter, any unresolved claims shall be settled by binding arbitration administered by [the AAA]</u> in accordance with its Home Construction Arbitration Rules or such other rules as may be applicable . . . . The Manufacturer and Homeowner agree to arbitrate <u>any and all claims,</u> disputes and grievances, not otherwise excepted herein, arising out of or relating to this Warranty, the purchase, sale, financing, insuring, design, construction, transportation, installation and condition of the Home, <u>including claims related to the independent dealer,</u> finance company or <u>any other person or entity</u> arising from or relating to the subject Manufactured Home covered by this single limited warranty.

(Doc. 6-4 at 3) (emphasis added). On the other hand, under the Regional Arbitration Agreement,

> Each party to this arbitration agreement acknowledges that neither party is required to use the services of the [AAA], and, <u>specifically, all parties agree that it is the intent of this arbitration agreement for the parties to refrain, if at all possible, from using the [AAA]</u> should an arbitration proceeding become necessary. <u>The parties agree to use the services of a neutral, third-party arbitrator who is both a licensed practicing attorney within the State of Mississippi and listed with the Mississippi Bar Association as a qualified arbitrator or mediator.</u>

(Doc. 12-2 at 8). Thus, enforcing the Regional Arbitration Agreement would require submitting the Giles-Regional dispute to a non-AAA arbitrator (if possible) in Rankin County, Mississippi. This, in turn, would contravene the Hamilton Arbitration Agreement's stricture that claims

against the independent dealer (Regional) relating to the Manufactured Home be settled by binding arbitration administered by the AAA. (See Doc. 6-4 at 3). The Alabama Supreme Court has held that when conflicting arbitration provisions apply to the same dispute, if one arbitration agreement contains a merger clause it will supersede the others. See Ex parte Palm Harbor Homes, Inc., 798 So. 2d 656, 660 (Ala. 2001). But in the absence of a merger clause in any arbitration agreement,[6] this Court is not aware of any Alabama decision addressing whether conflicting terms in an arbitration agreement prevent a contract from forming.

Giles cites several cases for the proposition that if conflicting provisions in dueling arbitration agreements reveal that there was no "meeting of the minds," there is no basis for compelling arbitration. Ragab v. Howard, 841 F.3d 1134, 1138 (10th Cir. 2016) ("Thus, the conflicting details in the multiple arbitration provisions indicate that there was no meeting of the minds with respect to arbitration."); Rockel v. Cherry Hill Dodge, 847 A.2d 621, 623-24 (N.J. Super. Ct. App. Div. 2004) ("Here, the arbitration agreement is highly ambiguous because the parties executed two documents which contain separate and somewhat disparate arbitration clauses. This ambiguity, we conclude, is fatal to the compelling of the arbitration of plaintiffs' CFA claims."). This Court finds adopting now Justice Gorsuch's reasoning in his dissent in Ragab, as an increasing number of courts, including the Fifth Circuit, have done, better effectuates both the parties' intent to arbitrate and the strong federal and Alabama policies favoring arbitration. As then Judge Gorsuch explained,

> To be sure and as my colleagues note, the six agreements before us differ on the details concerning how arbitration should proceed. This disagreement, my colleagues suggest, is fatal because to form a contract the parties must agree on "essential terms." . . . But, respectfully, I believe treating the procedural details surrounding arbitration in this case

---

[6] Hamilton's Limited Warranty states, "This Warranty is intended to constitute the entire agreement between the Manufacturer and Homeowner." (Doc. 6-4 at 7). Because the clause does not purport to act as the entire agreement as between Hamilton, Giles, and Regional, it is not a merger clause in the sense used in Ex parte Palm Harbor Homes, 798 So. 2d 656.

as <u>non</u>essential terms would do a good deal more to "effectuate the intent of the parties" before us, itself always the goal of contract interpretation.

<u>Ragab</u>, 841 F.3d at 1139 (Gorsuch, J., dissenting) (emphasis included). The Fifth Circuit's logic is also persuasive:

The conflicting [arbitration] provisions do not change that result. Though the agreements differ over procedural details, they speak with one voice about <u>whether to arbitrate</u>. We thus find good company in Justice Gorsuch: We will not shut our eyes to an agreement that demonstrates a baseline intent to arbitrate just because it contains inconsistent terms about procedural minutiae.

<u>Matter of Willis</u>, 944 F.3d 577, 582 (5th Cir. 2019) (emphasis included). <u>See also Atlantic Specialty Ins. Co. v. Anthem, Inc.</u>, No. 1:19-CV-3589, 2020 WL 2526000, at *10 (S.D. Ind. May 18, 2020) ("Despite the inconsistencies between the ACE ADR provision and the JAMS International provision, the OneBeacon policy, read as a whole with the followed policies, makes one thing clear: These parties selected private dispute resolution.") (internal quotations and citations omitted); <u>Garg v. VHS Acquisition Subsidiary No. 7</u>, No. 4:20-CV-40060, 2021 WL 1873962, at *9 (D. Mass. Mar. 9, 2021) ("Applying these principles, the undersigned finds that the procedural inconsistencies between the FTP and GME arbitrations alone do not reach the point where construction becomes futile.") (internal quotations and citations omitted). Having concluded that conflicting terms in the Hamilton Arbitration Agreement do not invalidate the Regional Arbitration Agreement, Regional will be entitled to compel arbitration pursuant to its own agreement so long as additional grounds do not render it unenforceable under Section 2 of the FAA.

### iii.   No Aspects of the Regional Arbitration Agreement Make It Unenforceable Under Alabama Law

In a last-ditch effort to prevent enforcement of the Regional Arbitration Agreement, Giles argues that the Regional Arbitration Agreement's forum-selection clause and cost-sharing

provisions, as well as the Agreement's purported internal inconsistencies, make the Agreement unenforceable. (Doc. 23 at 4-6). Giles's everything-but-the kitchen sink approach fails and the Regional Arbitration Agreement is not unenforceable under Alabama law on any of the grounds Giles raises.

Giles disputes the validity of the forum-selection clause for having no relation to the underlying transaction, imposing an extreme burden on her, and allegedly conflicting with the internally cross-referenced AAA Consumer Rules and its Due Process Protocol. (Doc. 23 at 4-6). Each of these arguments falls short. First, Giles personally declares,

> I never travelled to Mississippi in connection with that purchase. I never dealt with anyone in Mississippi in connection with the purchase, as far as I know . . . Nothing about this case has anything to do with Mississippi, let alone Rankin County, Mississippi. I understand that Rankin County is over 200 miles and nearly 4 hours away from my home in Loxley . . . It would be extremely inconvenient, if not prohibitive for me to travel to Rankin County, Mississippi, to arbitrate my claims against Regional.

(Doc. 23-4 at 1-2). Forum-selection clauses are generally enforceable under Alabama law. Ex parte Rymer, 860 So. 2d 339, 341 (Ala. 2003). Alabama has adopted the majority rule that outbound forum-selection clauses are enforceable so long as enforcement is neither unfair nor unreasonable under the circumstances. Professional Ins. Corp. v. Sutherland, 700 So. 2d 347, 351 (Ala. 1997) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)). The party challenging the enforcement of an outbound forum-selection clause has the burden of showing that enforcing the clause would be either: (1) unfair on the basis that that the contract containing it was affected by fraud, undue influence, or overweening bargaining power; or (2) unreasonable on the basis that the chosen forum would be seriously inconvenient. Sutherland, 700 So. 2d at 352.

Here, Giles does not contend that the Regional Arbitration Agreement was procured by fraud, undue influence, or overweening bargaining power. Giles also fails to carry her burden of

showing that the Regional Arbitration Agreement's selected forum of Rankin County, Mississippi would be unreasonable on the basis that forcing arbitration there would be seriously inconvenient. Regional Enterprises, LLC is a Mississippi LLC, all members of which are Mississippi citizens. (Doc. 1 at 2). The LLC's principal place of business is in Flowood, Mississippi, (id.), which is in Rankin County, the selected forum. Moreover, as Regional points out, it is disingenuous to argue that a three-and-a-half hour drive for an arbitration would be seriously inconvenient. (See Doc. 5). Distance of travel does not establish that a forum is unreasonable under Alabama law. Ex parte D.M. White Const. Co., Inc., 806 So. 2d 370, 373 (Ala. 2001) (internal citations omitted). Indeed, the Alabama Supreme Court has enforced outbound forum-selection clauses requiring litigation be conducted in such far-flung forums as Missouri,[7] Minnesota,[8] and Florida.[9] "Inconvenience sufficient to void a forum-selection clause is present where a trial in that forum would be so gravely difficult and inconvenient that the challenging party would effectively be deprived of his day in court." Ex parte PT Sols. Holdings, LLC, 225 So. 3d 37, 46 (Ala. 2016) (internal quotations and citations omitted). Giles's declaration, (see Doc. 23-4), and other filings do not satisfy this lofty standard.

Neither is the clause in the Regional Arbitration Agreement that "The Responsibility of the cost of the arbitration shall be determined by the arbitrator" objectionable. Giles asserts, "The agreement also contains an open-ended costs provision requiring Plaintiff to pay whatever costs are assessed by the arbitrator. There are no criteria or limits stated as to what costs should be imposed on Plaintiff." (Doc. 23 at 4). However, the possibility that a claimant could be required to pay a share of the arbitration costs is not, by itself, a sufficient reason to invalidate an

---

[7] Ex parte N. Cap. Res. Corp., 751 So. 2d 12 (Ala. 1999).
[8] O'Brien Eng'g Co. v. Cont'l Machs., Inc., 738 So. 2d 844 (Ala. 1999).
[9] Sutherland, 700 So. 2d 347.

arbitration clause prior to arbitration. <u>Boyd v. Town of Hayneville, Ala.</u>, 144 F. Supp. 2d 1272, 1278 (M.D. Ala. 2001). As explained above, the party contesting the arbitration clause on the basis that the cost of arbitration makes the clause unconscionable bears the burden of showing the likelihood of incurring prohibitively expensive arbitration costs. <u>Thicklin</u>, 824 So. 2d at 734-35; <u>see also Randolph</u>, 531 U.S. at 90-91. Giles fails to fulfill this obligation under Alabama law.

Additionally, forcing Giles to comply with the terms of the Regional Arbitration Agreement just discussed does not "conflict with other plain language in the agreement." (Doc. 23 at 5). The Regional Arbitration Agreement adopts "generally accepted arbitration procedures, <u>such as those</u> promulgated by [the AAA]." (Doc. 12-2 at 8) (emphasis added). Regional correctly responds,

> This provision does not require the AAA's Consumer Rules, as Plaintiff contends. Instead, the AAA's Consumer Rules are used as an example of a generally accepted arbitration procedure permissible under the Arbitration Agreement. Thus, Plaintiff's attempt to place the Arbitration Agreement and the AAA's Consumer Rules in conflict is unpersuasive.

(Doc. 26 at 5-6).

Finally, Regional is correct that even if the Regional Arbitration Agreement did expressly incorporate the AAA's Consumer Rules by reference, the Agreement does not contradict the AAA's Consumer Rules or its Due Process Protocol. According to Giles,

> The only applicable AAA promulgated procedures are its Consumer Rules and its Due Process Protocol. Under Consumer Rule R-11, the location of any in-person hearing is to be determined by the AAA. That determination is guided by Principle 7 of the Due Process Protocol which requires that any in-person hearing be conducted in a location "reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances." (Doc. 19-14 at 2).

(Doc. 23 at 5) (emphasis omitted). However, Consumer Rule R-11 actually stipulates that the AAA initially determine an arbitration's locale when the parties have not already so agreed. Here, the parties have already permissibly selected Rankin County, Mississippi as the arbitral

forum. Likewise, Consumer Rule R-16(a) calls for the AAA to appoint an arbitrator from its National Roster of Arbitrators when the parties have not appointed an arbitrator and have not agreed to a process for appointing one. Here, the parties agreed to use a "neutral, third-party arbitrator who is both a licensed practicing attorney within the State of Mississippi and listed with the Mississippi Bar Association as a qualified arbitrator or mediator." (Doc. 12-2 at 8). Assuming for the sake of argument that the AAA's Consumer Due Process Protocol Statement of Principles applies, the Court cannot find that Rankin County is not "reasonably convenient" per Principle 7 as to Giles under the circumstances. As mentioned, this Court will not view ordering Giles to drive ~200 miles as seriously inconvenient when the Alabama Supreme Court has enforced forum selection clauses requiring litigation to proceed in much farther jurisdictions.

### iv.   Conclusion

Based on the above, it is **ORDERED** that Regional's Motion for Stay of Proceedings and to Compel Arbitration, (Doc. 12), is **GRANTED**. The proceedings between Giles and Regional are hereby **STAYED** pending resolution of these claims in accordance with the Regional Arbitration Agreement.

**DONE** this 4th day of December 2023.

<u>**s / Kristi K. DuBose**</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**